UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BENYEHUDAH WHITFIELD**, *et al.*,
      **Plaintiffs,**

                        **Case No. 2:23-cv-1448**
      **v.**                        **JUDGE EDMUND A. SARGUS, JR.**
                                  **Magistrate Judge Kimberly A. Jolson**

**MUSKINGUM COUNTY, OHIO**, *et al.*,
      **Defendants.**

## <u>OPINION AND ORDER</u>

      This matter is before the Court on Defendants' Muskingum County, Ohio, Muskingum County Prosecuting Attorney Ronald Welch, and Muskingum County Sheriff's Office Detective Richard Perry's Motion for Judgment on the Pleadings. (Mot., ECF No. 7.) Plaintiffs BenYeHudah Whitfield and BenYeHudah's National Transport Service, LLC ("BNTS") responded and opposed Defendants' Motion. (Opp., ECF No. 8.) Defendants replied in support of their Motion. (Reply, ECF No. 12.) For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Judgment on the Pleadings.

## I.      BACKGROUND

      This case is about whether Plaintiffs' constitutional rights were violated when the Muskingum County Sheriff's Office and Prosecutor's Office impounded Plaintiff BenYeHudah Whitfield's van for over 70 days without a post-seizure hearing.

### A.  The arrest of Kahmayee Whitfield and the impoundment of the van.

      On July 30, 2022, police officers with the Muskingum County Sheriff's Office initiated a traffic stop of Kahmayee Whitfield, Plaintiff BenYeHudah's brother. (Compl., ¶ 19.) Kahmayee worked as an independent contractor for his brother's company, BNTS, and was making a delivery when he was stopped by law enforcement. (*Id.* ¶¶ 15–16.) BNTS is a delivery company and

Kahmayee was driving one of two cargo vans owned by BenYeHudah and used to transport cargo for BNTS. (*Id.* ¶¶ 12, 13.)

Kahmayee was stopped for purportedly running over the white line on the shoulder of the road. (*Id.* ¶ 19.) After initiating the traffic stop, the Muskingum County Sheriff's Office brought a drug sniffing canine to the scene and the canine alerted law enforcement to the presence of narcotics in the vehicle. (*Id.* ¶ 22.) Following the positive alert, police searched the van and found marijuana and two loaded firearms in a bag located behind the driver's seat. (*Id.* ¶¶ 25–26; *see also* ECF No. 3-1, PageID 38, 49–50 (a Maverick 12-gauge shotgun and Armi .380 caliber pistol).)

Kahmayee was arrested and charged with improper handling of a firearm under Ohio Revised Code § 2923.16(b). (Compl., ¶ 27.) Because of his arrest, the police seized and impounded the van. (*Id.* ¶ 28.) A few days later a grand jury returned an indictment charging Kahmayee with two counts of improperly handling a firearm in a motor vehicle. (*Id.* ¶ 29; *see also* ECF No. 3-1, PageID 61–62.) The Indictment includes language subjecting the property listed in the Indictment (the Maverick 12-gauge shotgun and Armi .380 caliber pistol) to civil asset forfeiture. (*Id.*)

### B. During Kahmayee's criminal prosecution, BenYeHudah worked to secure the return of the van and the van's cargo.

BenYeHudah alleges that he learned of the van's impoundment one day after Kahmayee was arrested and immediately began working to get back the van and its cargo. (Compl., ¶ 32.) He contacted the Muskingum County Jail and the Prosecutor's Office, where he reached Defendant Ronald Welch, Muskingum County's elected prosecutor. (*Id.* ¶¶ 34, 36.) Prosecutor Welch informed BenYeHudah that the van would not be released to him and that he should contact the Sheriff's Office to discuss the return of the van's cargo. (*Id.* ¶ 38.)

A few days later, Muskingum County released the cargo of the van to BenYeHudah after searching the vehicle. (*Id.* ¶¶ 43–45.) BenYeHudah consented to the search of the van to obtain

the release of the van's cargo. (*Id.*) Defendant Perry, a detective with the Muskingum County Sheriff's Office, confirmed this in his August 2, 2022 report. (ECF No. 3-1, PageID 74.)

After receiving the van's cargo, BenYeHudah continued to communicate with the Muskingum County Prosecutor's Office and the Muskingum County's Sheriff's Office to obtain the release of the van. (Compl., ¶¶ 54–55, 61, 63, 68–69.) Several of BenYeHudah's emails to Prosecutor Welch and Detective Perry seeking the return of his van, or an explanation for why the van would not be returned, went unanswered. (*Id.* ¶¶ 62, 67, 70; ECF No. 3-1, PageID 77–79.) Eventually Detective Perry told BenYeHudah to contact the Muskingum County Prosecutor's Office with questions about the release of the van. (ECF No. 3-1, PageID 75.) When he did so, Prosecutor Welch responded by referencing Rule 16 of the Ohio Rules of Criminal Procedure, which governs the type of information a defendant is entitled to in a criminal case and how to request that information. (*Id.* ¶ 64; ECF No. 3-1, PageID 79.)

### C. Defendants release the van on October 11, 2022.

Two months later, on October 11, 2022, the Muskingum County Sheriff's Office notified BenYeHudah that the van was available for pick up. (*Id.* ¶ 81.) The van was thus impounded from July 30, 2022 until October 11, 2022—just over 70 days. (*Id.* ¶¶ 19, 81.) Plaintiffs allege that the van was a "critical component" of BNTS's business and because of the van's impoundment, Plaintiffs suffered economic losses. (*Id.* ¶¶ 14, 77, 88.)

In January 2023, several months after the van was released, Kahmayee entered a plea of no contest and was found guilty of one count of Improper Handling of a Firearm in a Motor Vehicle. (ECF No. 3-1, PageID 69–70.)

### D. Plaintiffs filed suit.

Plaintiffs filed this Complaint raising three claims. Plaintiffs allege that (1) all Defendants violated Plaintiffs' due process rights under 42 U.S.C. § 1983; (2) Defendants Welch and Perry

engaged in a conspiracy to violate Plaintiffs' civil rights under 42 U.S.C. § 1985; and (3) that Defendants violated Ohio Revised Code § 2921.45 by depriving Plaintiffs of their civil rights as public servants. (Compl., ¶¶ 92–97.) Plaintiffs sue Prosecutor Welch in his official and individual capacity and Detective Perry in his official capacity only.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a Rule 12(b)(6) motion. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). Accordingly, the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegation as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). To survive a motion for judgment on the pleadings, the "complaint must contain either direct or inferential allegations re[garding] all material elements to sustain a recovery under some viable legal theory." *Id.* (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). "Conclusory allegations or legal conclusion masquerading as factual allegations will not suffice." *Id.* (citing *Mezibov*, 411 F.3d at 716).

When evaluating a motion for judgment on the pleadings, a court can consider the pleadings and any written exhibits attached to the pleadings. *See Gillispie v. City of Miami Twp.*, No. 3:13-cv-416, 2022 U.S. Dist. LEXIS 193831, at *12 (S.D. Ohio Oct. 24, 2022) (Rose, J.). Although allegations in the complaint are the primary focus, a court may also consider "matters of public record, orders [and] items appearing in the record of the case." *Id.* (citing *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)); *see also Brent v. Wayne Cnty. Dept. of Hum. Servs.*,

4

901 F.3d 656, 695 (6th Cir. 2018) (considering exhibits attached to the motion "so long as they are referred to in the Complaint and are central to the claims contained therein.").

### III.    ANALYSIS

Defendants move for judgment on the pleadings, arguing that most of Plaintiffs' claims lack any legal basis. The Court first addresses Defendants' argument that BNTS lacks standing. Finding that BNTS has standing, the Court then turns to whether Prosecutor Welch is entitled to either absolute or qualified immunity in his role as the elected prosecutor of Muskingum County. Then the Court dismisses as duplicative Plaintiffs' claims against Detective Perry and Prosecutor Welch in their official capacities, before analyzing whether Defendant Muskingum County can be held liable as a municipality under *Monell*. After concluding that Plaintiffs' may proceed on their claims against Muskingum County, the Court finds that Defendants are entitled to statutory immunity on Plaintiffs' remaining state-law claims.

### A.  BenYeHudah's National Transport Service, LLC's Standing

Defendants argue that BNTS lacks standing to bring its federal claims. (Mot., PageID 125–26.) To support this argument, Defendants assert that BNTS did not own the van to claim an injury for standing. (*Id.*)

"Standing is a threshold issue for bringing a claim in federal court and must be present at the time the complaint is filed." *Moody v. Mich. Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017). The general requirements of standing are familiar. Under Article III of the Constitution, federal courts are restricted to adjudicating "Cases" and "Controversies." U.S. Const. art. III, § 2. "To ensure that a case or controversy is before a court and to avoid rendering an advisory opinion, three basic requirements must be met." *Carman v. Yellen*, No. 23-5662, 2024 U.S. App. LEXIS 20033, at *23–24 (6th Cir. Aug. 9, 2024). The plaintiffs must show (1) that they suffered an injury in fact, (2) a 'causal connection between the injury and the conduct complained of,' and (3) a

likelihood that the injury "will be redressed by a favorable decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The party invoking federal jurisdiction"—here, Plaintiffs—"must establish these elements commensurate with the burden of proof required at each stage of the litigation." *Id.* at *24. At this juncture, the Court accepts the facts as pleaded by Plaintiffs. *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014).

BenYeHudah bought the van at issue in 2021 for about $43,000.00. (Compl., ¶ 13.) BenYeHudah allowed BNTS to use the van to deliver freight as part of the business enterprise. (*Id.* ¶ 12.) Although BenYeHudah owned the van, the van was "a critical component of BNTS's business." (*Id.* ¶ 14.) When Defendants seized and retained the van for over 70 days, BNTS suffered lost business opportunities and lost profits because the business could not use half of its essential equipment. (Opp., PageID 59.) Plaintiffs seek an award of monetary damages to compensate both BenYeHudah and BNTS for the economic losses suffered for the time when the van was seized by Muskingum County. (Compl., PageID 12.)

Accepting the facts as pleaded by Plaintiffs, BNTS has satisfied the three standing requirements. Because the van was seized by Defendants, BNTS did not make as many deliveries as it otherwise would have and suffered lost profit and business opportunities. BNTS's injury is concrete and traceable to Defendants' conduct. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("The most obvious [concrete injuries] are traditional tangible harms, such as physical and monetary harms."). BNTS's injury could be redressed by a favorable decision awarding Plaintiffs monetary relief.

Since the Court finds that BNTS has standing, the Court now addresses Plaintiffs' claims against Prosecutor Welch and Detective Perry in their official capacities.

6

### B. Plaintiffs' Official-Capacity Claims Against Prosecutor Welch and Detective Perry

Plaintiffs sue Muskingum County as well was the County's elected prosecutor—Ronald Welch individually and in his official capacity. (Compl., ¶ 10.) Plaintiffs also sue Defendant Richard Perry in his official capacity as a detective employed by the Muskingum County's Sheriff Office. (*Id.* ¶ 11.) Plaintiffs allege that all Defendants violated Plaintiffs' due process rights in violation of 42 U.S.C. § 1983, and that Prosecutor Welch and Detective Perry engaged in a conspiracy to violate Plaintiffs' rights in violation of 42 U.S.C. § 1985.

Suing a government employee in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kouider v. Parma City Sch. Dist. Bd. of Educ.*, 480 F. Supp. 3d 772, 780 (N.D. Ohio 2020) (*quoting Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). When a government entity is also named as a defendant, along with the government official in his or her official capacity, federal courts will dismiss the official capacity claim. *Id.*; *see also Johnson v. Wash. Cnty. Career Ctr.*, No. 2:10-cv-076, 2010 U.S. Dist. LEXIS 62597, at *11 (S.D. Ohio June 22, 2010) (Smith, J.) ("Courts regularly dismiss as redundant claims against agents in their official capacities when the principal entity is also named as a defendant in the suit.").

Here, Plaintiffs sued Defendant Muskingum County, Ohio directly as well as Prosecutor Welch and Detective Perry in their official capacities. Since the government entity is also named as a defendant, Plaintiffs' official-capacity claims against Prosecutor Welch and Detective Perry are redundant and subsumed by the claims against Muskingum County. Accordingly, Plaintiffs claims against Prosecutor Welch and Detective Perry in their official capacities are **DISMISSED**.

### C.  Prosecutor Welch's Immunity Under § 1983

Plaintiffs also sue Prosecutor Welch in his individual capacity under 42 U.S.C. § 1983 for violations of their due process rights. Defendants raise both absolute and qualified immunity as defenses to Prosecutor Welch's liability in his individual capacity. (Mot., PageID 116–122.) The Court will address each defense in turn.

### i.    Prosecutor Welch's absolute immunity is a close call.

Defendants argue that Prosecutor Welch is entitled to absolute immunity from suit under § 1983 because the decision to retain the van as evidence was within the scope of his prosecutorial immunity. (*Id.* PageID 118–19.)

Absolute immunity is the exception rather than the rule, and has traditionally been reserved for those activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430 (1979). Prosecutors have absolute immunity for the initiation and prosecution of a criminal case, including the presentation of the State's case at trial. *Id.* at 431; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003) (explaining that absolute immunity applies to a prosecutor's "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."). But a prosecutor is not entitled to absolute immunity when acting as an administrator or investigator, instead of an advocate. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "The analytical key to prosecutorial immunity, therefore, is advocacy—whether the actions in question are those of an advocate." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

Here, Defendants argue that Prosecutor Welch's decision to maintain custody of the van as evidence was a professional evaluation of the evidence necessary to present the state's case against

Kahmayee at trial. (Mot., PageID 119.) Plaintiffs counter that if the Court grants Prosecutor Welch absolute immunity, any prosecutor could retrospectively shield themselves from liability by claiming their conduct was done in preparation for a possible trial, thereby allowing the exception for a prosecutor's trial preparations to swallow the rule that only a prosecutor's actions as an advocate are entitled to immunity. (Opp., PageID 152.)

The Supreme Court and the Sixth Circuit articulated a reluctance to extend the doctrine of absolute immunity. *E.g.*, *Burns*, 500 U.S. at 486–87 (explaining the presumption that "qualified rather than absolute immunity is sufficient to protect government officials in their exercise of their duties"); *Spurlock v. Satterfield*, 167 F.3d 995, 1003 (6th Cir. 1999) (describing absolute immunity as a shield "to ensure that those individuals intimately involved in the judicial process are able to carry out their responsibilities without the constant threat of vexatious lawsuits, not a sword allowing them to trample the . . . rights of others").

The Court finds whether Prosecutor Welch's actions were that of an advocate, or rather those of an administrator or investigator, to be a close call. But since the Court finds that Prosecutor Welch is entitled to qualified immunity, it need not determine whether he is entitled to absolute immunity at this time.

### ii. Prosecutor Welch is entitled to qualified immunity.

Defendants argue Plaintiffs § 1983 and § 1985 claims against Prosecutor Welch fail as a matter of law because Prosecutor Welch is entitled to qualified immunity. (Mot., PageID 119–20.) This Court agrees. Since the alleged unlawfulness of his conduct was not clearly established, Prosecutor Welch is entitled to qualified immunity.

A district court may consider qualified immunity at the motion to dismiss stage. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation

of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted) (explaining that qualified immunity is an immunity from suit rather than a mere defense to liability). Regardless of the stage of litigation, the Court must balance the need for public officials to be free from the constant fear of lawsuits stemming from the performance of their official duties, with the reality that an action for damages may offer the only avenue for vindication of constitutional guarantees. *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). The plaintiff bears the burden of proving that the defendant is not entitled to the defense once asserted. *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006).

To determine whether a government official is shielded from liability by qualified immunity, the Court asks two questions: "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 231; *Harlow*, 457 U.S. at 818 (articulating the test for qualified immunity). For immunity to attach, both prongs must be satisfied, but it does not matter which prong is addressed first. *Pearson*, 555 U.S. at 236–42. The Court begins the analysis with the second prong—by asking whether the unlawfulness of Prosecutor Welch's conduct was clearly established when Plaintiffs' van was seized and retained.

A right is clearly established if it would be clear to a reasonable official that their conduct was unlawful in the situation they confronted. *McIntyre v. Love*, No. 2:23-cv-679, 2023 U.S. Dist. LEXIS 163014, at *8 (S.D. Ohio Sep. 13, 2023) (citing *Yerkes v. Ohio State Highway Patrol*, No. 22-3030, 2022 U.S. App. LEXIS 35260, at *11 (6th Cir. Dec. 19, 2022)). If an official has "fair warning" that their actions are unconstitutional, then the right is clearly established. *Hood v. City of Columbus*, 827 F. App'x 464, 471 (6th Cir. 2020) (citation omitted). Generally, case law from

the United States Supreme Court, the Court of Appeals, or the highest state court is necessary to clearly establish a right. *Durham v. Nu'man*, 97 F.3d 862, 866 (6th Cir. 1996).

Plaintiffs argue that the law clearly establishes that law enforcement may not retain a seized vehicle for a prolonged period without initiating forfeiture proceedings or conducting a hearing. (Opp., PageID 145, 152–53.) Because Defendants seized the van and did not initiate forfeiture proceedings, Defendants violated clearly established law. (*Id.*) It is Defendants' position that there is neither a clearly established right to post-seizure hearing, nor to the immediate return of lawfully seized property during the pendency of a criminal investigation. (Mot., PageID 101.)

Plaintiffs point to the Sixth Circuit's opinion in *Ingram v. Wayne County* and argue that the Sixth Circuit clearly established the right to a timely post-seizure hearing. 81 F.4th 603, 620 (6th Cir. 2023) (holding that the county violated the plaintiffs' due process rights by seizing and holding their vehicles for months without either a hearing to contest the seizure or initiating civil forfeiture proceedings). (Opp., PageID 145, 150.)

But recently the United States Supreme Court issued its opinion overruling *Ingram* in part. *Culley v. Marshall*, 601 U.S. 377 (2024) (citing *United States v. $8,850*, 461 U.S. 55 (1983), and *United States v. Von Neumann*, 474 U.S. 242 (1986)). There, the Supreme Court held that the Constitution only requires a timely forfeiture hearing but not a separate preliminary hearing to determine whether the police may retain the car pending the forfeiture hearing. *Id.* at 384.

Reliance on either case is improper. Plaintiffs' van was seized on July 30, 2022 and held until October 11, 2022. (Compl., ¶¶ 19, 81.) Both cases post-date the seizure and retention of Plaintiffs' van. *See, e.g.*, *Lawler v. Hardeman Cnty.*, 93 F.4th 919, 927 (6th Cir. 2024) (finding cases that post-date the conduct "do not clearly establish anything 'at the time' the offic[ials]

11

acted"). Meaning that neither case establishes whether the law was clearly established ***at the time*** of the alleged constitutional violation.

At the time Defendants seized and held Plaintiffs' van, it was clear that under the Fourteenth Amendment's Due Process Clause, an individual deprived of their property has the right to be heard "at a meaningful time and in a meaningful manner." *Morrison v. Warren*, 375 F.3d 468, 475 (6th Cir. 2004) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)). And "a meaningful time and in a meaningful manner" as it relates to seized property entitles an individual to a timely forfeiture proceeding, not more. *$8,850*, 461 U.S. at 562–63 (holding a post-seizure delay "may be become so prolonged that the dispossessed property owner has been deprived of a meaningful hearing at a meaningful time"); *Von Neumann*, 474 U.S. at 247 (applying the four factors outlined in *Barker v. Wingo*, 407 U.S. 514, 530 (1972) and concluding that a timely "forfeiture proceeding, without more, provides the post-seizure hearing required by due process" to protect the plaintiff's property interest); *State v. Baumholtz*, 553 N.E.2d 635, 636 (Ohio 1990) (applying *Barker* and holding five-and-a-half-month delay in initiating forfeiture proceedings without a credible justification rises to the level of a due process violation).

The case law above establishes that when an individual's property is seized, the individual is entitled to a forfeiture proceeding within a reasonable time, which will be violated if the delay exceeds more than a few months. *See Baumholtz*, 553 N.E. at 636 (five and a half months). To assess whether the delay rose to the level of a constitutional violation, courts apply the four factors set forth in *Barker v. Wingo*: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right; and (4) any prejudice suffered. *Id.*; *see also Von Neumann*, 474 U.S. at 247. The case law does not, however, establish that individuals are entitled to a preliminary hearing after the seizure, but before forfeiture proceedings. *Id*. This conclusion, based on the law

at the time of the alleged conduct, is consistent with the Supreme Court's later holding in *Culley*. 601 U.S. at 384.

Thus, at the time of the alleged constitutional violation, it was not clear that holding Plaintiffs' van without a separate post-seizure, pre-forfeiture hearing violated Plaintiffs' due process rights. The case law made clear that failing to initiate forfeiture proceedings five-and-a-half months after property is seized may rise to the level of a constitutional violation, after considering all factors in *Barker v. Wingo*. But Plaintiffs cite no case that clearly establishes that holding property for 70 days, or roughly two-and-a-half months, without initiating forfeiture proceedings violates the Constitution.

Further, as the Court in *Baumholtz* explained, the pendency of criminal proceedings impacts the reasonableness of the delay in initiating forfeiture proceedings. *Baumholtz*, 553 N.E.2d at 639 (explaining that the pendency of criminal proceeding alone does not toll the obligation to bring forfeiture proceedings but is a factor to consider). Criminal proceedings against Kahmayee Whitfield remained pending for the entire time Defendants held the van. (Mot., PageID 108–09.) No governing caselaw put forth by Plaintiffs establishes that holding a vehicle for 70 days during the pendency of a criminal proceeding violates the Due Process Clause. Thus, there would be no way for Prosecutor Welch to know that doing so was unlawful. Because the alleged unlawfulness of Prosecutor Welch's conduct was not clearly established, he is entitled to qualified immunity. Accordingly, Defendants' Motion is **GRANTED IN PART** and Plaintiffs' claims against Prosecutor Welch in his individual capacity are dismissed.

### D. Defendant Muskingum County's Municipal Liability

The Court now turns to the remaining § 1983 claim against Muskingum County. Plaintiffs bring a *Monell* liability claim against Defendant Muskingum County for alleged violations of the Due Process Clause of the Fourteenth Amendment. Plaintiffs argue that Prosecutor Welch, who

13

had final policymaking authority, created or ratified the allegedly unconstitutional policy in Muskingum County permitting law enforcement to seize and retain vehicles indefinitely without a hearing or a legitimate justification. (Opp., PageID 156–57.)

The qualified immunity that shielded Prosecutor Welch in his individual capacity from § 1983 liability does not apply to government entities like Muskingum County. *See Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 749 (6th Cir. 2015) (clarifying that qualified immunity protects only individual public officials and should not be confused with governmental immunity). A local government unit and its officials may be liable under § 1983 when a constitutional deprivation arises from a government custom or policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (explaining that a municipality is only responsible for its own actions and wrongdoings, it is not vicariously liable under § 1983 for the actions of its employees). To succeed on a *Monell* claim, a plaintiff must prove that his "constitutional rights were violated and that a policy or custom of the municipality was the moving force behind the deprivation of the plaintiff's rights." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010).

The plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (quotation omitted). Under *Monell* and its progeny, there are four ways to establish a constitutional deprivation through policy or custom: "(1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance of acquiescence of federal violations." *Hood v. City of Columbus*, 827 F. App'x 464, 472 (6th Cir. 2020) (citation omitted).

14

Plaintiffs do not allege that Muskingum County maintained an official unconstitutional policy in a written or formal manner, instead they proceed on the second theory. Under this theory, Plaintiffs argue that Prosecutor Welch, who had final policymaking authority, ratified the allegedly unconstitutional policy in Muskingum County permitting law enforcement to seize and retain vehicles indefinitely without a hearing or a legitimate justification. (*See* Compl., ¶ 89 ("It is the policy of Muskingum County that the release of seized vehicles is solely at the discretion of the County Sheriff, Sheriff's Department Employees, and/or the County Prosecutor.").)

Defendants make two counterarguments. First, that Plaintiffs are only able to identify one allegedly violative act—not a custom or policy—to give rise to municipal liability. (Reply, PageID 188–89.) And second, that Prosecutor Welch did not have final policymaking authority over the retention of lawfully seized property. *Id.* The Court reviews the counterarguments in reverse order.

First, "in Ohio, a county prosecutor has final decision-making authority with regard to the operation of their offices and discharge of their duties." *Burchwell v. Warren Cnty., Ohio*, No. 1:13-cv-297, 2014 U.S. Dist. LEXIS 41116, at *5 (S.D. Ohio Mar. 27, 2014) (Barrett, J.), *aff'd*, 582 F. App'x 656 (6th Cir. 2014) (citing *Stone v. Holzberger*, 807 F. Supp. 1325, 1335 (S.D. Ohio 1992) *aff'd*, 23 F.3d 408 (6th Cir. 1994) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Therefore, Plaintiffs have plausibly alleged that Prosecutor Welch is a final decision-maker for the purposes of Muskingum County municipal liability.

But the only evidence Plaintiffs offer of the policy or custom that allegedly violates the constitution is the decision to retain Plaintiffs' van after it was lawfully seized by law enforcement subsequent to Kahmayee's arrest. Assuming that this single action was unconstitutional, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional

municipal policy." *Phillips v. City of Cincinnati*, No. 1:18-cv-541, 2019 U.S. Dist. LEXIS 89421, at *29 (S.D. Ohio May 29, 2019) (Black, J.) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985)). Accordingly, the Court begins with an analysis of whether Plaintiffs sufficiently pled a constitutional violation to survive the Motion for Judgment on the Pleadings, and then turns to whether Plaintiffs put forth satisfactory evidence that the single incident suggests an unconstitutional municipal policy.

### i. Plaintiffs plausibly allege a constitutional violation.

Plaintiffs allege that Defendants violated their due process rights by seizing and retaining their van for over 70 days without adequate process to contest the seizure. (Opp., PageID 145–46.) Defendants counter that Plaintiffs were neither entitled to the immediate return of their van that was lawfully seized during the pendency of a criminal proceedings, nor additional post-seizure process. (Reply, PageID 179.) Thus, according to Defendants, no constitutional violation occurred and Plaintiffs' remaining claims must fail as a matter of law. (*Id.*)

As explained above when analyzing whether the law was clearly established for purposes of qualified immunity, when an individual's property is seized, the individual is entitled to a forfeiture proceeding within a reasonable time, which will be violated if the delay exceeds more than a few months. *See Baumholtz*, 553 N.E. at 635 (five and a half months). But due process only requires a timely post-seizure forfeiture hearing, not a separate preliminary hearing to determine whether the police can retain the property pending the forfeiture hearing. *Culley*, 601 U.S. at 384 (citing *$8,850*, 461 U.S. 55, and *Von Neumann*, 474 U.S. 242); *see also Cremeans v. Taczak*, No. 22-3730, 2023 U.S. App. LEXIS 21425 (6th Cir. Aug. 14, 2023) (concluding that the police department violated due process by holding money seized for 19 months without a forfeiture hearing and without a credible explanation for the delay). As the Court explained above, the law did not clearly establish whether 70 days without a hearing and without initiating forfeiture

proceedings rose to the level of a constitutional violation. (*See supra*, Section III.C.ii.) Determining whether the seizure and retention violated Plaintiffs' due process rights will require the Court to apply the facts here to the four factors in *Barker v. Wingo*. *See, e.g.*, *Culley*, 601 U.S. at 384.

### a. Length of Deprivation

Starting with the first factor, the Court analyzes whether the delay in initiating forfeiture proceedings rises to the level of a due process violation. Plaintiffs' van was held for over 70 days without a hearing or opportunity to contest the seizure. (Compl., ¶¶ 19, 81.) While the Court acknowledges that this is not an insignificant amount of time to be without one of the two vans BNTS uses to make deliveries, the deprivation was significantly less than the five-and-a-half-month delay suffered by the plaintiffs in *Baumholtz* or the 19-month delay in *Cremeans*. Plaintiffs ask the Court to extend the Sixth Circuit's recent holding in *Cremeans* and find that even a two-month delay in initiating forfeiture proceedings is unlawful. But Plaintiffs offer no support for this extension of the law. Accordingly, the length of the deprivation does not support the conclusion that Plaintiffs suffered a violation of their procedural due process rights.

### b. Muskingum County's Reason for the Deprivation

Muskingum County explains that it seized and retained Plaintiffs' van because the van was potentially needed as evidence in Kahmayee's trial for improperly handling a firearm in a motor vehicle. (Mot., PageID 108–09.) The County offers only one piece of evidence to support this justification, an email from Prosecutor Welch to BenYeHudah:

> Criminal Rule 16 in Ohio provides for the manner in which a defendant may receive discovery in a criminal matter. Please refer to the rule for [determining] the type of information the defendant is entitled, whom may request that information and the manner in which it will be provided.

(ECF No. 3-1, PageID 78–79.) Presumably, Prosecutor Welch's email meant the van was evidence and to receive such evidence, BenYeHudah needed to adhere to the process provided in Rule 16.

Plaintiffs argue this justification was concocted after Plaintiffs filed suit to avoid liability. And if the van were needed as evidence, then logically, Defendants would have held the van until the criminal proceedings against Kahmayee concluded. But that was not the case here. Defendants released the van to BenYeHudah on October 11, 2022, but did not accept Kahmayee's plea of no contest until January 2023.

Ohio law permits law enforcement to retain property lawfully seized until "the time it is no longer needed as evidence or for another lawful purpose." Ohio Rev. Code § 2981.11(A)(1). The statute both allows law enforcement to keep property as evidence, but also imposes a duty on law enforcement to return seized property without unnecessary delay. *See State v. Grace*, 2023-Ohio-165, ¶ 18, 205 N.E.3d 1255, 1259 (Ohio Ct. App. Jan. 20, 2023). The statute mirrors the general presumption in the law that property seized must be returned to its owner once criminal proceedings conclude. *See Savoy v. United States*, 604 F.3d 929, 932 (6th Cir. 2010) (citing Rule 41(g) of the Federal Rules of Criminal Procedure); *United States v. Wilson*, No. 1:07CR137, 2011 U.S. Dist. LEXIS 61858, at *4 (N.D. Ohio May 31, 2011) ("[W]hen the Government seizes property for use in an investigation or trial the property must be returned once criminal proceedings have concluded, unless it is contraband or subject to forfeiture.").

But the pendency of a criminal proceeding alone does not justify seizing property indefinitely without a hearing. *See Baumholtz*, 553 N.E.2d at 639. The Due Process Clause requires a timely forfeiture hearing, and the pendency of a criminal proceeding is only an element considered when determining whether the delay in initiating forfeiture proceedings was unreasonable. *Id.*

While it is certainly a plausible justification that Defendants kept the van as evidence, the Court is not prepared to conclude as a matter of law based on a single email that this was the only justification or that this explanation justifies the duration of the seizure. Plaintiffs' counterargument raises questions about Defendants' purported justification. If the van were needed as evidence, Defendants would have kept it at least until Kahmayee entered his plea of no contest. Ascertaining the truth of  Defendants' explanation involves questions of fact and credibility determinations better reserved for the trier of fact. Thus, this factor favors Plaintiffs.

### c.  Plaintiffs' Diligence in Seeking the Return of the Van

Defendants argue that Plaintiffs did not show diligence in seeking the return of the van because they did not utilize any remedies available under state law. (Mot., PageID 116–18.) But Plaintiffs submit many emails where BenYeHudah diligently sought the return of the van and its cargo. (*See* ECF No. 3-1, PageID 75–80.)

The Sixth Circuit has held that the delay between the seizure and the forfeiture hearing becomes more unreasonable when a plaintiff diligently asserts their right to the return of their property. *Cremeans,* 2023 U.S. App. LEXIS 21425, at *11. In *Cremeans*, the plaintiffs made multiple written requests to the Chillicothe Law Director seeking the return of their property and eventually filed a state-court action for replevin. *Id.* Even though the plaintiffs did not initiate a hearing under Ohio Revised Code § 2981.03(A)(4),[1] the district court found—and the Sixth Circuit affirmed—that the plaintiffs had "adequately asserted their rights to the property." *Id.* The plaintiffs' diligence made the delay before the forfeiture hearing unreasonable. *Id.*

---

[1] Ohio Revised Code § 2981.03 is Ohio's forfeiture statute. Ohio Revised Code § 2981.03(A)(4) gives an individual the right to file a motion for their return of their property.

19

Drawing all reasonable inferences in Plaintiffs' favor, the Court finds BenYeHudah plausibly alleged diligence in seeking the return of the van and its cargo. Within days of the van's impoundment, BenYeHudah contacted the Muskingum County Jail and the Prosecutor's Office. (Compl., ¶¶ 32, 34, 36.) He arranged a meeting with Prosecutor Welch and Detective Perry, (ECF No. 3-1, PageID 74; *see also* Compl., ¶¶ 43–45), and even after the van's cargo was released, he continued to communicate with Defendants to obtain the release of his van. (Compl., ¶¶ 54–55, 61, 63, 68–69.) He sent emails on August 5, August 9, September 15, September 22, and September 27, 2022. (ECF No. 3-1, PageID 75–80.) Many of these emails went unanswered. (*Id.*) Although BenYeHudah did not pursue other remedies under state law, like an action for replevin as the plaintiffs did in *Cremeans*, failing to do so does not negate the fact that he diligently sought the return of his property. Accordingly, this factor favors Plaintiffs.

### d.  Prejudice to Plaintiffs

The last factor  evaluates any prejudice suffered by Plaintiffs, but the kind of prejudices it addresses does not apply here because here no forfeiture proceedings were initiated. This factor analyzes whether the delay hampered a claimant from presenting their defense in the forfeiture proceeding or underlying criminal proceeding. *Baumholtz*, 553 N.E.2d at 639 (explaining that prejudice could be suffered if there was a loss of witnesses or other important evidence because of the delay); *Cremeans v. Taczak*, No. 2:19-cv-2703, 2022 U.S. Dist. LEXIS 147827, at *41 (S.D. Ohio Aug. 17, 2022) (Marbley, J.), *aff'd,* 2023 U.S. App. LEXIS 21425 (6th Cir. Aug. 14, 2023) (describing the inquiry as whether the delay prejudiced the ability to defend against a forfeiture).

Here, no forfeiture proceedings were initiated so the delay could not interfere with Plaintiffs' ability to defend against a forfeiture. The only prejudice Plaintiffs point to is the hardship experienced from losing the ability to make deliveries for the approximately 70 days

Defendants seized and retained the van. This prejudice is not the kind of prejudice this factor was intended to account for and accordingly, this factor is neutral.

The second and third factors, however, favor Plaintiffs. On balance, Plaintiffs alleged a plausible violation of their due process rights guaranteed by the Fourteenth Amendment Due Process Clause. The question now becomes whether a single purported incident of unconstitutional activity allows Plaintiffs' claims to survive.

> ii. **Although a close call, Plaintiffs plausibly allege a municipal policy for purposes of *Monell* liability.**

Generally, a single incident of unconstitutional activity is not enough to impose *Monell* liability on a municipality. *See Phillips*, 2019 U.S. Dist. LEXIS 89421, at *29. That said, a "single decision can constitute a policy when ratified by an official with final decision-making authority." *Wallace v. Coffee Cnty.*, 852 F. App'x 871, 877 (6th Cir. 2021) (citation omitted).

Here, Plaintiffs allege that Prosecutor Welch's decision to retain the van for over 70 days without a hearing was made with final decision-making authority and thus constitutes a policy of the municipality. (Opp., PageID 157–58.) The discretion afforded to Prosecutor Welch in determining when to seize and retain vehicles, coupled with this allegedly unconstitutional incident, demonstrates that the municipal policy did not include a timely forfeiture hearing. *Id.*

Plaintiffs cite *Pembaur v. City of Cincinnati* which held that a municipality can be held liable under § 1983 for a single decision by the municipality's policymakers. 475 U.S. 469, 481 (1986). There, the Supreme Court stated that "[i]f the decision to adopt [a] particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Id.*

Prosecutor Welch at minimum approved of the decision to continue holding Plaintiffs' van. In response to an email request from BenYeHudah seeking the return of the van or an explanation for its continued retention, Prosecutor Welch pointed BenYeHudah to Rule 16 of the Ohio Rules of Criminal Procedure. (ECF No. 3-1, PageID 47–48.) As Muskingum County's elected prosecutor, he was the County's authorized decisionmaker on questions of evidence in a criminal proceeding. Thus, his decision to continue holding the van without a hearing could represent an act of official government policy.

Without more evidence, such as other incidents where Prosecutor Welch retained seized property without forfeiture proceedings, the Court finds this to be a close call. But given the early stage in the litigation, Plaintiffs have stated a plausible *Monell* liability claim. Accordingly, Defendants' Motion for Judgment on the Pleadings is **DENIED IN PART**. Plaintiffs may proceed on their § 1983 claims against Muskingum County, Ohio.

### E.  Plaintiffs' State Law Claims

Plaintiffs bring claims against all Defendants for violations of Ohio Revised Code § 2921.45, which makes it a misdemeanor for a public servant to knowingly, deprive a person of a constitutional or statutory right. (Compl., ¶¶ 96–97.) Defendants argue that they are shielded from liability on principles of political subdivision immunity under Ohio's Political Subdivision Tort Liability Act ("PSTLA," Ohio Rev. Code § 2744.02, *et seq.*) (Mot., PageID 126–127.) And that Prosecutor Welch is immune under the PSTLA from state law liability as an employee of a political subdivision. (*Id.* PageID 126.) The Court takes Defendants' arguments in reverse order.

### i.  Prosecutor Welch's state law immunity

Prosecutor Welch's immunity under the PSTLA requires a two-step analysis. *King v. City of Columbus*, No. 2:18-CV-1060, 2019 U.S. Dist. LEXIS 59274, at *8–9 (S.D. Ohio Apr. 5, 2019). First, the Court must determine whether immunity presumptively applies to Prosecutor Welch. *Id.*

22

Under Ohio law, presumptive immunity applies to employees in civil actions brought to "recover damages for injury, death, or loss to person or property allegedly caused by an act or omission in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.03(A).

Here, presumptive immunity applies to Prosecutor Welch who was an employee of the Muskingum County Prosecutor's Office and was acting within the course and scope of his employment. All of Plaintiffs' allegations against Prosecutor Welch involve conduct related to his prosecutorial functions,[2] which qualifies as a governmental function under § 2744. *See* Ohio Rev. Code § 2744.01(c)(2)(f) (defining governmental function as including prosecutorial functions).

Having found that presumptive immunity applies, the Court now evaluates whether any of the statutory exceptions rebut that presumption. *See King*, 2019 U.S. Dist. LEXIS 59274, at *9. Defendants maintain that no exceptions apply, but Plaintiffs argue that the statutory exception under Ohio Rev. Code § 2744.03(A)(6)(b) applies. (Opp., PageID 163–64.) Prosecutor Welch can still be held liable in tort if his "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." *King*, 2019 U.S. Dist. LEXIS 59274, at *9 (citations omitted).

Plaintiffs fail to sufficiently allege any wrongdoing with the requisite intent for this exception to apply. Plaintiffs' Complaint does not mention that Prosecutor Welch acted with malice, bad faith, or in a reckless manner. (*See* Compl.) And in response to Defendants' Motion, Plaintiffs only argue that it is too early in the litigation to resolve whether Prosecutor Welch acted with the requisite intent but put forth no factual allegations to support their claims. (Opp., PageID 162–63.) Without factual allegations to suggest that Prosecutor Welch actions were malicious,

---

[2] The Court views "prosecutorial functions" as enumerated under Ohio Rev. Code § 2744.01(c)(2)(f) more broadly than those of an advocate, or those activities "intimately associated with the judicial phase of the criminal process" under absolute immunity. *See Imbler*, 424 U.S. at 430.

wanton, or reckless, the exception cannot apply. Prosecutor Welch is accordingly entitled to immunity, and the Court **DISMISSES** Plaintiffs' individual-capacity state-law claims against him.

### ii. Defendants' state law immunity

Defendants next urge the Court to dismiss the remaining state-law claims against Muskingum County and Detective Perry in his official capacity because Ohio's PSTLA applies. (Mot., PageID 126–27.)

To determine whether a political subdivision is immune, courts utilize a three-step analysis. *See King*, 2019 U.S. Dist. LEXIS 59274, at *13. As with Prosecutor Welch, the analysis begins with whether presumptive tort immunity applies. Ohio Rev. Code § 2744.02(A)(1). And as with Prosecutor Welch, the Court finds that it does. Muskingum County is a political subdivision of Ohio and Plaintiffs' complaint alleges conduct by employees of the county in furtherance of a governmental function that caused loss to person or property. *Id.*; Ohio Rev. Code § 2744.02(A)(1). The power to impound and seize a motor vehicle constitutes a governmental function under Ohio law. *See, e.g.*, *Pavlik v. City of Cleveland*, 2009-Ohio-3073, ¶ 18 (Ohio Ct. App.) ("This court has held that the police power to impound a motor vehicle constitutes a governmental function."); *Maine v. Boardman Police Dep't*, 2006-Ohio-4954, ¶ 28 (Ohio Ct. App.) (holding that confiscating a boat during a criminal investigation was a governmental function of the police department).

Next, the Court determines whether an exception applies. Section 2744.02(B) lists five statutory exceptions to presumptive immunity. *See* Ohio Rev. Code § 2744.02(B)(1)–(5). Plaintiffs argue that the fifth exception applies. (Opp., PageID 166.) That exception allows a political subdivision to be liable for claims involving civil liability expressly imposed on the subdivision by another provision of the Ohio Revised Code. *King*, 2019 U.S. Dist. LEXIS 59274, at *14.

24

Plaintiffs allege that their claims involve civil liability imposed on the County by Ohio Rev. Code § 2307.60. (Opp., PageID 166.) Ohio Rev. Code § 2307.60 authorizes a civil action for damages caused by criminal acts. *Buddenberg v. Weisdack*, 161 N.E.3d 603, 605 (Ohio 2020) (citation omitted). Plaintiffs allege that the interference with their constitutional rights, a misdemeanor under Ohio Rev. Code § 2921.45, is a criminal act. Thus, Plaintiffs' argument is that these two statutory provisions (Ohio Rev. Code §§ 2921.45 and 2307.60) overcome the presumptive immunity. (Opp., PageID 168.)

Defendants do not address this argument in their reply in support of their Motion. (Reply, ECF No. 12.) But even if this case fell within the exception under Ohio Rev. Code § 2744.02(B)(5), the Court would turn to the third and final step of the analysis. A political subdivision can still avoid liability under the third step if any of the immunities and defenses under Ohio Rev. Code § 2744.03 apply. *See Wakefield v. Williamstown Volunteer Fire Co.*, No. 2:23-cv-01353, 2023 U.S. Dist. LEXIS 203652, at *12 (S.D. Ohio Nov. 14, 2023) (Marbley, C.J.) (describing three-step inquiry for statutory immunity); *Theobald v. Bd. of Cnty. Comm'rs*, 332 F.3d 414, 416 (6th Cir. 2003) (explaining several of the immunities and defenses under Ohio Rev. Code § 2744.03). A political subdivision is immune from liability if the alleged injury resulted from an employee's "performance of a judicial, quasi-judicial, ***prosecutorial***, legislative, or quasi-legislative function." Ohio Rev. Code § 2744.03(A)(1) (***emphasis*** added).

Here, the statute provides for statutory immunity for political subdivisions engaged in a prosecutorial function. *Id.* Because the van was seized in relation to the criminal prosecution of Kahmayee Whitfield, the Court finds that Muskingum County and Detective Perry in his official capacity are entitled to immunity. Accordingly, Plaintiffs' state-law claims are **DISMISSED**.

### F.  Parties' Motion and Partial Motion for Summary Judgment

Lastly, before the Court issued this Opinion and Order, the Parties also filed Motions for Summary Judgment. (*See* Def. Mot. for Summary Judgment, ECF No. 21; Pl's Partial Mot. for Summary Judgment, ECF No. 22.) Because this Opinion and Order resolves several of Plaintiffs' claims, the Parties are **ORDERED** to re-file their Motion and Partial Motion for Summary Judgment. Defendants' Motion for Summary Judgment (ECF No. 21) and Plaintiffs' Partial Motion (ECF No. 22) are thus **DENIED without prejudice** for re-filing in light of this Opinion and Order.

## IV.    CONCLUSION

Defendants' Motion for Judgment on the Pleadings (ECF No. 7) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claims against Prosecutor Welch and Detective Perry in their official capacities are duplicative of Plaintiffs' claims against Defendant Muskingum County and are **DISMISSED**. Because Prosecutor Welch is entitled to qualified immunity, Plaintiffs' § 1983 claims against him in his individual capacity are **DISMISSED**. Plaintiffs' *Monell* liability claim against Muskingum County **may proceed**, but Plaintiffs' state-law claims against all Defendants are barred by statutory immunity and are **DISMISSED**.

Finally, Defendants' Motion for Summary Judgment (ECF No. 21) and Plaintiffs' Partial Motion for Summary Judgment (ECF No. 22) are **DENIED without prejudice** for re-filing in light of this Court's Opinion and Order. The Parties are **ORDERED** to re-file their Motions for Summary Judgment, if any, **on or before November 4, 2024**. Responses shall be filed by **November 25, 2024,** and any replies shall be filed by **December 9, 2024**.

**IT IS SO ORDERED.**

**9/18/2024**                                          **s/Edmund A. Sargus, Jr.**
**DATE**                                                   **EDMUND A. SARGUS, JR.**
                                                                   **UNITED STATES DISTRICT JUDGE**